**James R. FLEMING and Paul V. McNutt, d/b as Anthony Wayne Broadcasting, Appellants,**

**v.**

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**Radio Fort Wayne, Inc., Intervenor.**

**No. 12452.**

United States Court of Appeals District of Columbia Circuit.

Argued May 2, 1955.

Decided June 13, 1955.

---

Messrs. Henry B. Weaver, Jr., and Thomas M. Cooley, II, Washington, D. C., for appellants.

Mr. Warren E. Baker, Gen. Counsel, Federal Communications Commission, with whom Messrs. J. Smith Henley, Asst. Gen. Counsel, Federal Communications Commission, Harrison, Ark., and Daniel R. Ohlbaum, Counsel, Federal Communications Commission, were on the brief, for appellee.

Mr. George S. Smith, Washington, D. C., with whom Mr. Edwin S. Nail, Washington, D. C., was on the brief, for intervenor.

Before EDGERTON, BAZELON and BASTIAN, Circuit Judges.

BAZELON, Circuit Judge.

James R. Fleming and Paul V. McNutt, a partnership doing business as Anthony Wayne Broadcasting; and Radio Fort Wayne, Inc., applied to the Federal Communications Commission for the same television channel at Fort Wayne, Indiana. After a consolidated hearing of the two applications, the trial examiner recommended the Anthony Wayne partnership for the grant. The Commission, however, reversed this initial decision and made the grant to Radio Wayne.

The Commission agreed with the examiner that each of the parties was legally, financially and technically qualified to construct and operate its proposed station. It concluded that there were no significant differences between the engineering proposals.[1] No preference was given either applicant on the issue of diversification of control of the media of mass communication. Radio Wayne's ownership of a television station and three standard broadcast stations in Indiana communities (including one in Fort Wayne) was found to be balanced by Anthony Wayne's control of the Journal-Gazette, a local daily morning newspaper.

Anthony Wayne was accorded a preference over Radio Wayne in two important respects: (1) it offered a superior programming service, primarily because it made provision for the production of programs outside its studios; (2) it was more likely to effectuate day-to-day program proposals because (a) the partners' extensive participation in local affairs indicated that their proposals to meet local needs would be fulfilled; (b) ownership and management by the partnership would be more closely integrated; and (c) Radio Wayne had failed to carry out programming proposals made in connection with its acquisition and operation of standard broadcast station WANE in Fort Wayne. Accordingly, the Commission found it "clear that [Anthony Wayne] can be more fully relied upon to provide a service adequately meeting the needs of the Fort Wayne area than can Radio Wayne."

The Commission believed, however, that this superiority of the Anthony Wayne partnership was outweighed by the acquiescence of the individual partners, as Journal-Gazette stockholders, "in certain advertising practices" which were deemed "contrary to the public interest." This consideration controlled the Commission's decision in favor of Radio Wayne.[2]

Briefly these are the salient facts concerning the advertising practices. Mr. McNutt and Mr. Fleming were minority stockholders in the morning Journal-Gazette Company. Together with another stockholder, they had power to control this company by virtue of a 1949 voting

---

1. This was also the trial examiner's holding, to which Anthony Wayne did not except. The partnership's proposal for a higher antenna and greater power than Radio Wayne did not warrant a preference, according to the Commission, because its effect upon "populations and areas to be served is speculative and can-

not be substantiated in the present state of the art."

2. "In no other area of comparison," the Commission said, "have we been able to discern significant difference between the parties."

trust agreement. In 1950, the Journal-Gazette entered into an agreement to consolidate its mechanical and business operations with the News Publishing Company, which owns and operates the News Sentinel, an evening paper in Fort Wayne. Under this agreement, management and control of these operations was transferred to Fort Wayne Newspapers, Inc., a corporation created for that purpose. The Journal-Gazette received a one-third interest and elected one director in the consolidated company, while the considerably larger News Sentinel received a two-thirds interest and elected the other two directors. The consolidation was justified, in the Commission's view, because it was prompted by the desire to provide a "more economical operation," and did not eliminate "diversity in editorial opinion in Fort Wayne." [3]

What the Commission disapproved—and the only thing it disapproved—was the institution of joint advertising rates by the newly created company. It found this practice reflected seriously on the comparative qualifications of the Anthony Wayne partners.[4] Under this practice, classified and national advertising is not sold for either the morning or evening paper separately, but is accepted only as a unit for both papers on the basis of their combined daily circulation. Though it was agreed that "Messrs. McNutt and Fleming cannot dictate the advertising practices of the agency corporation," the Commission pointed out that they were able to control the Journal-Gazette's "attitude" toward these practices. Responsibility "must be imputed to them," it said, in view of their "announced intention not to take steps to bring about the abandonment of these practices    *    *    *"

Anthony Wayne brought this appeal. Before the appeal was argued, however, Mr. McNutt died. The Commission made the following response to the statement filed in this court suggesting his death:

"that in the event this Court should reverse the Commission's decision herein, the question of the effect of the death of Paul V. McNutt during the pendency of this appeal is one which the Commission will have to decide upon any remand by this Court. This statement is made for the purpose of setting forth our position that the continuation of the appeal proceedings does not affect the right of the Commission, in the event of a remand, to make a determination as to the effect of the death of Paul V. McNutt on the status of appellants under the law of the State of Indiana and other applicable law and Commission policy."

■  In supplemental briefs filed pursuant to our request, all the parties urge that we dispose of the appeal on the present record. They oppose a remand to the Commission, before our review, for its determination of the effect of Mr. McNutt's death on its decision. The Commission re-asserts that such a determination would be required only if we reverse upon the present record. We are impelled, however, by the particular circumstances of this case to remand before review of the merits.

As we have indicated, any decision on the present record must turn on the question whether the Commission erred in giving controlling weight to the partnership's attitude toward and acquiescence in the imposition of a joint rate on advertisers. Clearly this consideration de-

3. Editorially the Journal-Gazette is Democratic, the News Sentinel, Republican.

4. Though this practice, deemed contrary to the public interest, was the decisive factor here in the rejection of Anthony Wayne, it did not bar renewal of the license of a standard AM broadcast station owned by the News Sentinel, which has a two-thirds interest in Fort Wayne News-papers, Inc. In explanation of the apparent disparate treatment of the issue, the Commission observed "that the question before the Commission at the time we considered the renewal application was whether the applicant met minimum qualifications, not its superiority over an applicant competing for the same facilities."

pended, in substantial part, upon the mental state and conduct of a person who has since died. The present record does not and could not include a determination of the effect of his death since this crucial circumstance occurred after the record closed. The Commission recognizes that the death of Mr. McNutt would be relevant to reconsideration of the case if we should reverse. We see no reason why it is not relevant now and why we should not have the benefit of its determination before deciding whether to reverse or affirm. Accordingly, the case is remanded to the Commission with directions to reopen the record to the extent necessary to determine the effect of Mr. McNutt's death and with authority to revise its decision on appeal here.[5]

■ Intervenor Radio Wayne claims that, unless this case is reversed, we lack power to remand with directions to reopen the record. It is true that the Communications Act, unlike some statutes governing administrative agencies,[6] confers no specific authority for remand without reversal.[7] But it is not unusual for an appellate body to "remand causes for further proceedings without deciding the merits * * *." Ford Motor Co. v. National Labor Relations Board, 1939, 305 U.S. 364, 373, 59 S.Ct. 301, 306, 83 L.Ed. 221.[8] In the Ford case, after appellate jurisdiction attached, the cause was returned, on petition of the Labor Board, so that the agency might make essential findings prior to a judicial decision. The Supreme Court's view that such a procedure was proper rested not only on a statutory provision authorizing remand[9] but also on the general equity powers which a court exercises in reviewing administrative action. Upon such a review, a court

> "may adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial action. The purpose of the judicial review is consonant with that of the administrative proceeding itself,—to secure a just result with a minimum of technical requirements."[10]

These principles are not limited to cases in which an agency has made inadequate findings. They extend to cases where, even without fault of the agency, the state of the record may preclude a "just result."[11] The failure of this record to deal with Mr. McNutt's death may have that effect, even if we assume, without deciding, that the record is adequate in all other respects.

Remanded for further proceedings consistent with this opinion.

5. On appeal from any modified decision, it may be possible for the parties to avoid expense by utilizing the record and briefs already submitted in this case, supplementing them with other material pertinent to our reconsideration of the case.

6. E. g., § 5(c) of the Federal Trade Commission Act, 15 U.S.C.A. § 45(c); § 24 (a) of the Public Utility Holding Company Act, 15 U.S.C.A. § 79x(a); § 19 of the Natural Gas Act, 15 U.S.C.A. § 717r.

7. See 66 Stat. 720, 47 U.S.C.A. § 402(h).

8. See also Villa v. Van Schaick, 1936, 299 U.S. 152, 155–156, 57 S.Ct. 128, 81 L.Ed. 91.

9. 49 Stat. 454 (1935), as amended, 61 Stat. 147 (1947), 29 U.S.C.A. § 160(e).

10. 305 U.S. at page 373, 59 S.Ct. at page 307.

11. Ibid. See National Labor Relations Board v. Jones & Laughlin Steel Corp., 1947, 331 U.S. 416, 427–428, 67 S.Ct. 1274, 91 L.Ed. 1575.