JONES TRUCK LINES, Inc.,
Plaintiff,

v.

UNITED STATES of America, and The
Interstate Commerce Commission,
Defendants,

and

East Texas Motor Freight Lines, and Superior Forwarding Company, Inc.,
Intervening Defendants.

No. 324.

United States District Court
W. D. Arkansas, Fayetteville Division.

Dec. 12, 1956.

698

George L. Gisler and Lewis A. Dysart, Kansas City, Mo., and Courtney C. Crouch, Springdale, Ark., for plaintiff.

Victor R. Hansen, Asst. Atty. Gen., James E. Kilday and Maurice A. Fitzgerald, Attys., Dept. of Justice, Washington, D. C., and Charles W. Atkinson, U. S. Dist. Atty., Fort Smith, Ark., for defendant, United States of America.

Robert W. Ginnane, Gen. Counsel, and James Y. Piper, Asst. Gen. Counsel, Washington, D. C., for defendant, Interstate Commerce Commission.

Joe P. Mathews, Dallas, Tex., and R. C. Butler, Little Rock, Ark., for intervening defendant, East Texas Motor Freight Lines.

G. M. Rebman, St. Louis, Mo., and R. C. Butler, Little Rock, Ark., for intervening defendant, Superior Forwarding Co., Inc.

Before WHITTAKER, Circuit Judge, and MILLER and RIDGE, District Judges.

WHITTAKER, Circuit Judge.

By this action the plaintiff, Jones Truck Lines, Inc.—hereinafter called Jones—asks this specially constituted three-judge Court to enjoin enforcement of, and to set aside, an order of the Interstate Commerce Commission, dated March 13, 1956, requiring Jones to cease conducting motor carrier operations in areas in Arkansas found in that order to be beyond the scope of its certificate of convenience and necessity.

Though jurisdictional and procedural questions are raised, the basic dispute is over what area is embraced in an irregular route operating authority in Arkansas, purchased by Jones (along with other operating rights) from Chief Express, Inc., with Commission approval, and covered in a new certificate, No. MC–111231 (Sub. No. 5), issued to Jones on October 4, 1951, which described the area as follows:

"Between points in Arkansas on and east of U. S. Highways 63 and 67 * * *."

These highways cross Arkansas somewhat in the form of an "X". Highway 63 enters Arkansas, from the north, at the Missouri-Arkansas border near the Arkansas town of Mammoth Springs, and runs, thence, southeasterly, through Hoxie, to the Mississippi River. Highway 67 enters Arkansas, from the north, at the Missouri-Arkansas border near the Arkansas town of Corning, and runs, thence, southwesterly, through Hoxie, to Texarkana, Arkansas. These highways, thus, cross at Hoxie.

Soon after the issuance of the questioned certificate, Jones published tariffs applicable to, and began operating in, and has ever since operated in, not only the east quadrant, but also in the north and south quadrants, of the "X".

On December 15, 1952, slightly more than one year after the issuance of the questioned certificate, the District Director of the Commission's Bureau of Motor Carriers (one Hagarty) stationed in Little Rock, wrote Jones, saying it appeared that Jones was erroneously interpreting the area description in the certificate "as embracing a larger area than that intended", and that "the area involved embraces only that portion of Arkansas on and east of U. S. Highway 63 from the Mississippi River to its junction with U.

S. Highway 67, and on and east of U. S. Highway 67 to the Arkansas-Missouri state line", and the letter requested Jones to confine its future activities to that area. Jones did not reply to that letter, but, in a later conference with a Commission representative, it disagreed with the interpretation of the area embraced by the certificate as set forth in that letter, and admitted it was conducting operations in the north and south quadrants of the "X", but claimed the right to do so under the language of the certificate and asserted it would continue to serve that area.

On March 24, 1955, the Commission, Division 5, entered an order instituting a formal investigation into the matter. The order recited that on October 4, 1951, in MC–111231, Sub. 5, a certificate was issued to Jones authorizing, in part, operations "over irregular routes between points and places in Arkansas on and east of U. S. Highways 63 and 67", and recited further that "there is reason to believe" that Jones had been operating to and from named towns in the south quadrant of the "X", which said certificate did not authorize it to serve, in violation of Section 206(a) (1) of the Interstate Commerce Act, and it ordered an investigation, under Sections 204(a) and 212(a) of the Act, into the practices of Jones, and further ordered Jones to appear for hearing at a time and place to be later fixed, and it further ordered the Commission's Bureau of Inquiry and Compliance—hereafter called the Bureau —to give timely notice to Jones, prior to the proposed hearing, of "the particular operations alleged to have been performed in violation of Section 206(a) (1) of said Act."

That order was timely served upon Jones, and, on April 15, 1955, counsel for the Bureau wrote Jones, referring to the Commission's order of March 24, 1955, instituting the investigation, and attaching an exhibit, listing 21 shipments transported by Jones to or from towns located in the south quadrant of the "X" referred to, and saying that the exhibit would be offered in evidence at the hearing, and saying further, "In addition, it will be contended that your company has no authority, under Sub. 5 above, to serve any portion of the territory in Arkansas lying east of Highway 67 and south of Highway 63, and lying west of Highway 67 and north of Highway 63."

To correct the error of reference to Section 204(a) in the original order— when Section 204(c) was intended—and to disclose the source of Jones' full operating authority, the Commission, on May 12, 1955, entered an amended order of investigation, reciting that certificates of public convenience and necessity issued to Jones in Docket numbered MC– 111231, and Subs. 1, 3, 5, 7, 8, 9, 15, 18 and 21 thereto, authorized operations over regular and irregular routes between points and areas in Illinois, Missouri, Kansas, Arkansas, Oklahoma, Texas and Tennessee, and reciting that on October 4, 1951, in MC–111231, Sub. 5, a certificate was issued to Jones authorizing, in part, operations over "irregular routes between points and places in Arkansas on and east of U. S. Highways 63 and 67, on the one hand, and, on the other, points to which service is authorized in connection with the regular routes described in said certificate", and reciting that there is reason to believe that Jones, in transporting commodities under the various certificates issued to it, or by various combinations of its operating authority, had been serving points in Arkansas, in the south quadrant of the "X", not authorized to be served under Certificate MC–111231, Sub. 5, in violation of Section 206(a) (1) of the Act, and ordering that an investigation be instituted, under Sections 204(c) and 212(a) of the Act, into Jones practices, and referring the matter to Joint Board No. 91 (consisting of representatives of the states of Missouri and Arkansas) for hearing at Little Rock on June 20, 1955.

A copy of that amended order was timely served on Jones, and on May 19, 1955, the Commission issued and served on Jones an amended notice of hearing, reciting that the hearing to be held at Little Rock on June 20, 1955, "will be

upon matters covered by the amended order of the Commission, Division 5, entered May 12, 1955."

On June 3, 1955, the Commission, Division 5, entered an order vacating so much of the order of May 12, 1955 as referred this matter to Joint Board 91 for hearing, and ordered that the matter be referred to Examiner Cantrell for hearing at Little Rock on June 20, 1955. That order was duly served upon Jones.

Before, and again at the time of, the hearing before Examiner Cantrell at Little Rock, on June 20, 1955, Jones objected both to the timeliness and the sufficiency of the notice of hearing, and also objected to the holding of the hearing before a Commission examiner, contending that the matter was one properly to be heard by a joint board. These objections were overruled, and the hearing proceeded before Examiner Cantrell at the place and on the date stated, at which the Bureau offered, and, over objection of Jones, the Examiner received in evidence, the original certificate, creating this irregular route operating authority, issued by the Commission to Righter Trucking Company on April 27, 1942, and all subsequent certificates issued by the Commission to transferees of this operating authority.

Examiner Cantrell filed his proposed report on October 10, 1955, finding and concluding that Jones' Sub. 5 certificate, in unambiguous terms, embraced only "points in Arkansas on and east of U. S. Highway 63 from the Mississippi River to Hoxie and on and east of U. S. Highway 67 from Hoxie to the Arkansas-Missouri state line", and that Jones was knowingly and willfully operating outside that area, under that certificate, in violation of Section 206(a) (1) of the Act, and should be ordered to desist therefrom, and he recommended that the Commission so find and order.

Exceptions were timely filed by Jones to the Examiner's proposed report, and on March 13, 1956, the Commission, Division 1, filed its report overruling Jones' exceptions, and finding and concluding that "If the term 'highways' plural is given full meaning then the only points authorized to be served are those on and east of *both* such highways", and that, in this view, the language in the Sub. 5 certificate would not be ambiguous, but if such is not the correct functional interpretation, then the language of the Sub. 5 certificate is ambiguous "and resort to its antecedents and extraneous matter is therefore permissible and required in order properly to construe respondent's certificate." The Commission then proceeded to examine the antecedent certificates and held that they were competent and material, and that consideration of them made it certain that Jones' Sub. 5 certificate "authorizes service only between points in Arkansas on and east of a line beginning at the Arkansas-Missouri state line and extending along U. S. Highway 67 to Hoxie, Arkansas, thence along U. S. Highway 63 to the Mississippi River", and that Jones has been, and is, engaged in the conduct of operations beyond the area scope of said certificate in violation of Section 206(a) of the Act, and the Commission, on that day, entered an order requiring Jones to cease and desist from so doing.

Jones timely filed a petition for rehearing, and to vacate said order, which was overruled, and soon afterward this suit was filed, asking us to permanently enjoin, and to set aside, the Commission's order. The parties were fully heard by us upon the record as made before the Commission and upon briefs and in oral argument at Fort Smith, Arkansas on October 29, 1956.

At the threshold, Jones raises a jurisdictional question. It contends that the Commission's order referring this matter for hearing to a Commission examiner was void because Section 205(a) of the Interstate Commerce Act, Section 305(a), Title 49 U.S.C.A., vested jurisdiction in, and required the hearing to be held by, a joint board. That sub-section requires that "when operations of motor carriers * * * conducted or proposed * * * involve not more than three States * * *" the Commission shall refer to a joint board for ap-

propriate proceedings "any of the following matters." The section then proceeds to specify the matters that must be so referred to a joint board. Jones claims this proceeding falls within the specification, there set forth, of an "application for * * * the suspension, change, or revocation of such certificates, permits, or licenses."

■■ We do not agree. We think this proceeding was one to interpret the area description contained in the Sub. 5 certificate and to determine the area of the operating rights granted thereby, and that it was not a proceeding for "the suspension, change, or revocation" thereof; and, thus, this was a "matter not specifically mentioned above" (in this subsection) and, hence, fell within the language of the first proviso of said subsection, saying "The Commission, in its discretion, may also refer to a joint board any investigation * * * proceeding or other matter not specifically mentioned above which may arise under this chapter", and that, therefore, the Commission had a discretion to refer this matter for hearing either to an examiner or to a joint board.

It is true the Commission's order, initiating the investigation, made reference to Section 212(a) of the Act, Section 312(a), Title 49 U.S.C.A., but that reference was mere surplusage as the order here was not, and could not have been, in any way predicated thereon.

But, even if this had been a proceeding for "the suspension, change, or revocation" of the certificate, still it is shown and even admitted, here, that the motor carrier "operations * * * conducted" by Jones extended into, and, thus, "involved", more than three states, namely Illinois, Missouri, Kansas, Arkansas, Oklahoma, Texas and Tennessee —a total of seven states, and, hence,— even in that case—the Commission would have had a discretion to refer the matter either to an examiner or to a joint board.

■ Jones next complains that it was not timely advised of the hearing, and was not timely and adequately advised of the legal authority and jurisdiction under which the hearing would be held and of the matters of fact and law asserted, within the meaning of, and as required by, Section 5(a) of the Administrative Procedure Act, Section 1004(a), Title 5 U.S.C.A. The facts, in these respects, have been fully set forth, and it would serve no useful purpose to recount them here. We think that they show that Jones was given timely notice of the time, place and nature of the hearing, and of the legal authority and jurisdiction under which it would be held, and of the matters of fact and law asserted, in due conformity with the provisions of the Administrative Procedure Act referred to, and that there is no merit in this assignment.

Now to the merits. Jones contends that the questioned language in the Sub. 5 certificate is grammatically clear and unambiguous, and, being so, that there is no room for construction, and that its rights thereunder must be determined solely from the recitals of the certificate, and that the Commission erred in receiving and considering the original certificate, creating this irregular route operating authority, and the subsequent certificates issued to purchasers and transferees thereof.

It observes that the town of Hoxie is the only point on *both* Highways 63 and 67. It then emphasizes the word "points", as indicating that more than one point was to be served, and, from this premise, it argues that the questioned language must necessarily be held to authorize service of points *on* either Highway 63 or 67. It then argues that inasmuch as the word "points" modifies and controls the phrase "east of" exactly as it modifies and controls the word "on", it follows, under grammatical rules of parallel construction, that the phrase "east of" means "points east of Highway 63 and points east of Highway 67", and that, therefore, the questioned language gives it the right to operate in the north and south quadrants of the "X", as well as in the east one.

Grammatically, the questioned language may not be ambiguous, but functionally it is. For the questioned language has no definite meaning until it is compared with a map showing the location of these highways. And when that comparison is made the ambiguities at once appear.

 The questioned language being functionally ambiguous, and Jones having acquired this outstanding operating right by purchase, and, hence, could acquire from its assignor only what its assignor had, the original certificate issued by the Commission, creating this irregular route operating authority, and all subsequent certificates issued to purchasers and transferees thereof, were admissible and competent evidence to be considered in resolving the ambiguities in the area description in the Sub. 5 certificate in question.

 When we look to the original certificate issued by the Commission, creating this irregular route operating authority, we see that it was issued to Righter Trucking Co., Inc. in number MC–75281, on April 27, 1942, and described the area authorized to be served as those points and places—

"In that part of Arkansas on and east of a line beginning at the Arkansas-Missouri state line and extending along U. S. Highway 67 to Hoxie, Ark., thence along U. S. Highway 63 to the Mississippi River * * *."

Afterward, on October 2, 1944, the Commission issued a corrected certificate to Righter (cancelling the one of April 27, 1942) describing this irregular route operating authority precisely as originally. In number MC–F2413, Frisco Transp. Co.—Purchase—Righter Trucking Co., Inc., 50 M.C.C. 95, the Commission approved the sale of certain part of Righter's operating authority to The Frisco Transportation Co., but the authority here under consideration was retained by Righter. Afterward, on March 17, 1948, the Commission issued a new certificate to Righter for that part of its operating authority (received under number MC–75281) which it had retained, and therein, for the first time, injected the questioned area description involved in this case.[1] Afterward, with Commission approval (in number MC–FC–27723), Righter sold and transferred these operating rights to Degraw and Murphy, partners, doing business as Chief Express, and the Commission issued to them, on September 5, 1950, under number MC–109888, a new certificate, again using the area description here questioned.[2] Afterward, with Commission approval (in number MC–FC–52588), Degraw and Murphy transferred these operating rights to their corporate successor, Chief Express, Inc, and on April 24, 1951, the Commission issued to it, under number MC–109888, a new certificate covering these rights under the same description,[3] and thereafter, Chief Express, Inc., with Commission approval (in MC–F–4912) sold and transferred this operating authority to the plaintiff, Jones Truck Lines, Inc., and, on October 4, 1951, the Commission issued to it a new certificate No. MC–111231, Sub. 5.[4]

1. That certificate bore a legend reading "This certificate constitutes (1) the remaining portion of the operating rights previously granted the above-named carrier under Docket No. MC–75281, portion of the rights having been purchased by Frisco Transportation Co., a corporation, Docket No. MC–89913, pursuant to MC–F2413, supra, the remaining rights modified in conformity with the later decision; and (2) also embraces the operating rights previously granted the above-named carrier under Docket No. MC–75281, Sub. 2."

2. That certificate bore the following legend: "This certificate embraces that portion of the operating rights granted in certificate No. MC–75281 acquired by the above-named carrier pursuant to MC–FC–27723 (assigned MC–109888)".

3. That certificate bore the following legend: "This certificate embraces the operating rights granted in certificate No. MC–109888, issued September 5, 1950, acquired by the above-named carrier pursuant to MC–FC–52588."

4. That certificate contains the following

This reference to the original certificate issued by the Commission, creating this irregular route operating authority, and to the mesne conveyances resulting in its acquisition by Jones, clears up the functional ambiguity in the area description in Jones' Sub. 5 certificate, and shows that it was intended to cover, and does cover, only those points and places in Arkansas on and east of a line beginning at the Arkansas-Missouri state line and extending along U. S. Highway 67 to Hoxie, Arkansas, thence along U. S. Highway 63 to the Mississippi River, as correctly interpreted and found by the Commission.

Jones argues that the legends on the several certificates, showing the source of the transferred and reissued operating rights, are not the action of the Commission, but of one of its clerks, and should be ignored. We think that is a matter of no moment, for, regardless of who placed those legends on those certificates, they are present, and the notice they give is derived from their terms and it is unimportant who placed them there.

Jones further argues that an examination of the antecedent certificates covering this operating authority shows a change in the description by the Commission, and that some purpose must be ascribed to that change. Whatever the purpose, if there was one, it only injected an ambiguity into the description and it did not expand—if, indeed, it could have expanded—the areas of the grant.

Lastly, Jones argues—in connection with its argument that the questioned language in its Sub. 5 certificate is not ambiguous and authorizes operations in the north and south quadrants of the "X"—that even if the change from the original to the present description was a mere error, the Commission is powerless to correct the error except upon a finding of willful violation under Section 212 (a) of the Interstate Commerce Act, Section 312(a), Title 49 U.S.C.A., under the

legend: "This certificate embraces that portion of the operating rights in certificate No. MC–109888, purchased by the

holding in Watson Bros. Transportation Co. v. United States, D.C., 132 F.Supp. 905, affirmed by the Supreme Court, 350 U.S. 927, 76 S.Ct. 302. As earlier pointed out, this is an action to interpret the area description contained in the Sub. 5 certificate and to determine the area coverage granted thereby, and is not a proceeding to suspend, change or revoke that certificate, and, therefore, Section 212(a) of the Act, though referred to in the order initiating the investigation, is not involved, and all the Watson case can be said to require in such circumstances, is that, to correct an error, the Commission must accord procedural due process and give notice and an opportunity to be heard. Both were accorded here. We do not think the Watson case has any application to the present one.

Our conclusion is that plaintiff has shown no basis upon which we might lawfully enjoin or vacate the Commission's order of March 13, 1956, and, therefore, plaintiff's complaint to enjoin and to vacate said order of the Commission must be, and it is hereby, denied and dismissed. It is so ordered.

above-named carrier pursuant to MC–F–4912, and assigned number MC–111231, Sub. 5."