The SQUAW TRANSIT COMPANY,
Plaintiff,

v.

UNITED STATES of America, and Interstate Commerce Commission,
Defendants.

Civ. A. No. 75–C–82.

United States District Court,
N. D. Oklahoma.

Oct. 24, 1975.

Mickey D. Wilson, Tulsa, Okl., Sayers, Scurlock, Binion & Brackett, Fort Worth, Tex., for plaintiff, Squaw Transit Co.

Nathan G. Graham, U. S. Atty., Tulsa, Okl. (Thomas E. Kauper, Asst. Atty. Gen., and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., on brief), for defendant, United States.

James T. Proctor, Atty., I.C.C., Washington, D. C., and Peter A. Fitzpatrick, Atty., I.C.C., Washington, D. C. (Fritz R. Kahn, Gen. Counsel, I.C.C., Washington, D. C., on brief), for defendant, I.C. C.

Before HOLLOWAY, Circuit Judge, BARROW, Chief District Judge, and COOK, District Judge.

## OPINION

BARROW, Chief Judge.

A statutory three-judge court was convened in the instant litigation, pursuant to 28 U.S.C. §§ 1336, 2325 and 2284, to review the decision of the Interstate Commerce Commission in connection with the denial of the application of Squaw Transit Company (hereinafter referred to as "Squaw") filed pursuant to 49 CFR 1065, and the subsequent denial of its Petition for Reconsideration.

Squaw is an Oklahoma corporation and operates as a motor common carrier in interstate and foreign commerce transporting various commodities, and pipeline commodities, over numerous irregular routes to, from and between various states in the United States. Such operations are carried on by virtue of Certificate MC–119176 and Subs as issued by the ICC. The principal office of Squaw is in Tulsa, Oklahoma. Squaw additionally maintains and operates equipment and terminal facilities at Houston, Texas and North Lima, Ohio.

Squaw, prior to the enactment of certain rules and regulations by the ICC, on February 25, 1974, performed a transportation service for the public by "tacking" or joining certain of its authorities, which have been referred to in the vernacular of the trade as "gateways".

On February 25, 1974, the Commission adopted rules and regulations effecting the tacking of irregular route motor common carrier operating authorities. In general, these new rules provide a procedure by which "gateways" could be eliminated in operations provided by joinder of separate irregular route motor common carrier certificates. 49 CFR 1065, et seq.

Two types of applications were provided for in the new rules. The type which involved Squaw required the filing of a formal application (called an OP–OR–9) for the elimination of gateways in irregular route operations in those cases where the most direct highway distance between the points to be served is less than 80% of the highway distance between such points over the carrier's authorized routing through the gateway.

In order that 49 CFR 1065 be complied with, the application had to be filed by June 4, 1974. A completed filing, in accordance with the rules, included the application; the designated fee; copies of the carrier's appropriate tariff provisions and certificates; a verified statement in support; a traffic abstract, embracing shipment transported through the gateway over the two year period preceding November 23, 1973, or if the carrier relied on certificated authorities issued to it after November 23, 1973, but pending prior thereto, shipper verified statements in support of the application.

Squaw tendered its application to the ICC as reflected by a letter from Mr. Clayte Binion, its attorney, dated June 3, 1974, as well as a Cashier's Check in the amount of $350.00 A copy of the application reveals that in Appendix I thereto, Squaw attempted to show that it sought to operate as a common carrier by motor vehicle, over irregular routes, in the transportation of certain commodities designated therein, between points in Michigan, Illinois, Indiana and Ohio, on the one hand, and, on the other, points in Arkansas, Louisiana, Mississippi, Alabama, Georgia, and Florida. It is stated that the purpose of the ap-

plication was to eliminate gateways in Oklahoma, Arkansas and Texas. In the letter transmitting the application, the attorney stated that he understood that such application called for the submission of evidence by applicant at the time the application was filed and that he was in the process of preparing it and that it would be promptly filed when prepared. He requested that the Commission call him collect if this was not satisfactory.

On August 26, 1975, the attorney for Squaw received two form letters from the ICC. One letter requested a copy of the application be served on the appropriate State Board having regulatory jurisdiction in the State of Florida; and the other requested that an appropriate tariff establishing that the proposed services were offered on November 23, 1973, be submitted and that copies of all pertinent authority be sent.

It appears that these requests were not complied with until October 7, 1974, as revealed by the Exhibits to the file.

On November 14, 1974, the ICC entered its order dismissing the application of Squaw, with the finding that the "applicant has failed to adduce evidence in the proceeding as required by 49 CFR 1065."

By instrument and pleading dated December 13, 1975, Squaw filed its Petition for Reconsideration of Order of Commissioner Robert L. Murphy, and Petition for Extraordinary Relief pursuant to Rule 102, General Rules of Practice. Said instrument encompassed the following deocuments:

1. The Petition;

2. Appendix I, which is an affidavit of Counsel for Squaw stating reasons for non-compliance with the time requisites in the OP–OR–9 application.

3. Verified statement of E. W. Dalrymple, Vice President of Squaw, in support of the Gateway Elimination Application with supporting evidence: a) copy of prior irregular route certificate, b) balance sheet and income state-

ment of the applicant for the latest available time period, c) list of Squaw Transit Company Terminal and Office Facilities, d) application to eliminate gateways in Oklahoma, Arkansas and Texas, e) summary of representative shipments handled within the involved territory, f) abstract of bills of Squaw for services rendered for supporting shippers.

4. Supporting shippers' statements.

Thereafter, on December 31, 1974, the Commission denied the Petition for Reconsideration on grounds that no sufficient or proper cause was shown for vacating its order of November 8, 1974, which dismissed the Squaw application for failure to adduce evidence as required by 49 CFR 1065. The order stated that Squaw still had available the recourse of filing a regular application for direct authority in which it could prove that public convenience and necessity require such service.

On January 19, 1975, Squaw filed its Petition for Stay of the Effective date of the Order of Division 1, acting as an Appellate Division, and for Extraordinary Relief Pursuant to Rule 102, General Rules of Practice.

The Commission denied Squaw's Petition for Stay and Extraordinary Relief on January 30, 1975, on the grounds that their prior order was entered in accordance with applicable law, and, thereby, the proceeding was rendered administratively final. The present litigation was commenced in this Court on February 28, 1975. After the convening of a statutory three-judge court, the matter was set down for hearing before the panel and on July 1, 1975, oral argument was heard and the matter was taken under advisement.

Squaw is not asking this Court to annul, set aside and enjoin the gateway rules and regulations themselves, nor is it asking the Court to direct the Commission to grant the OP–OR–9 gateway elimination application. The only relief Squaw seeks is for the Court to set aside the Commission's previous orders

and direct the Commission by remand to consider the application and evidence submitted in support thereof.

Plaintiff contends the refusal of the Commission to accept tendered evidence (although late) and consider the application constituted an abuse of discretion and amounted to arbitrary and capricious action for the following reasons:

1. The Commission has in the past relaxed or modified its rules in other cases, and failure to accept the petition and tendered evidence is inconsistent with prior Commission actions in similar cases.

2. The Commission accepted the OP–OR–9 application and filing fee, accepted supplemental information leading Squaw's counsel to believe it could submit supporting evidence, but when such evidence was submitted, the same was erroneously rejected.

3. Plaintiff alleges on information and belief the Commission has in cases, governed by the same rules and regulations as in this case, allowed other applicant motor carriers to file evidence in such application after the required due date, which constitutes unfair and unjust treatment to plaintiff and denial of equal protection of the law.

4. The failure of the Commission to receive the tendered evidence and dismissing application deprives plaintiff of a valuable property right without due process of law.

5. The reasons given by counsel for Squaw for the late filing of evidence are substantial and constitute good cause for the receipt of tendered evidence.

6. The Commission abused its discretion in failing to grant the request of Squaw for receipt of tendered evidence, as Squaw complied with all applicable rules and regulations and the same were summarily denied by Commission without any basis in law or fact.

The Commission, on the other hand, contends that the only issue to be resolved is whether the Commission acted within its discretion in dismissing the gateway application which was admittedly filed without any supporting evidence as required by the rules. As to the allegations of Squaw that other applicants, similarly situated, were not dismissed because of late filing, the Commission in its Reply Brief of June 16, 1975, stated that an informed rebuttal regarding plaintiff's allegations of discriminatory treatment in processing of approximately 22,000 letter notices and 573 applications filed under gateway rules is impossible in view of the total absence of any factual data supporting such claims in the record before the Commission or this Court. They further contend that Squaw has failed to specify a single instance where the Commission treated another applicant differently, and, moreover, such claims were never asserted before the Commission and cannot be the basis for reversal. If such allegations could be substantiated, the Commission states, Squaw's failure to raise these issues before the agency in the first instance by petition for reconsideration constitutes a bar to the raising of the claim here. They contend that an administrative agency must be provided an opportunity to consider all objections to its actions at a time appropriate under its rules.

Thereafter, in its reply brief, Squaw did give examples of other applicants and how they were treated by the Commission, to which the Commission responded by distinguishing said examples. Moreover, at oral argument before this court, at the request of the Commission, an affidavit, replete with examples of other applicants was permitted by this Court to be filed later. Therefore, any objection initially tendered by the Commission as to examination by this Court of the various applicants initial packets and subsequent additions thereto are deemed to have been waived. Due to the new nature of the regulations under consideration by this Court and their implementation by the Commission, this Court deems it proper to go into other applications. The Court is aware

of the disdain with which the courts have looked upon litigation affidavits and have called them 'post hoc' rationalizations, see *Burlington Truck Lines v. U. S.*, 371 U.S. 156, 168–169, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962); *SEC v. Chenery Corp.*, 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Such affidavits are deemed appropriate in this instance with new regulations and uncertain procedures. It is only through an extensive and in depth examination of the applications and their dispositions furnished this Court that a clear picture can be perceived and a just result reached in this matter.

The Erenberg affidavit reflects that with the promulgation and enactment of 49 CFR 1065.1, an onslaught of applications arrived at the Commission's office on or about June 4, 1974. Mr. Erenberg states in his affidavit at page 14:

"A total of twenty four thousand, seven hundred and nine (24,709) applications have been submitted for filing pursuant to 49 CFR 1065, of which five hundred and seventy nine (579) are OP–OR–9 applications. A total of three hundred and twenty seven (327) OP–OR–9 applications have been decided."

It is without question that the time period of 60 days (i. e. the cut-off date of June 4, 1974) provided for by the adoption of 49 CFR 1065.1 resulted in an avalanche of applications and created not only problems for the Commission, but the applicants as well.

The new regulations were quite explicit as to the documentation necessary in submitting an OP–OR–9 application seeking direct-service authority. It is thus apparent that when Squaw presented its OP–OR–9 application, the substantiation that necessarily should have accompanied the submission should have encompassed the following:

1. Submission of copies of appropriate tariff provisions showing that such through services were offered by the carrier on or before November 23, 1973.

2. An initial verified statement in support of the application which should include all of the evidence intended to be presented in the proceeding. Included in this submitted evidence should be applicant's record of past operations through the gateway for the 2 years prior to November 23, 1973. If relevant, copies of tariff provisions verifying that said through services were offered by the carrier on November 23, 1973 should be submitted.

3. Although not required, consideration would be given to evidence of supporting shippers.

The evidence is uncontroverted that the initial application of Squaw did not contain all of the documentation delineated above. Indeed the evidence adduced reflects that the submission contained only a list of the officers and directors, maps and a cover letter from Squaw's counsel.

The Commission contends that although the purpose of Squaw's application was the elimination of gateways in the States of Oklahoma, Arkansas and Texas there was no evidence in the applications submitted to indicate past operations between the points in issue nor evidence of shippers' needs for such services. The Court notes, however, that the lack of evidence of shippers' need for service (i. e. shippers' statements) are only suggested and not required by the regulations here involved. The Commission further contends that all other applicants who submitted OP–OR–9 applications similar to Squaw (lacking all of the required documentation) received the same treatment as did Squaw—their applications were dismissed and/or their applications were denied. Inapposite to the Commission's contentions, Squaw argues that, although all required evidence was not submitted, others with similar initial applications were eventually granted their gateway relief. The result of such action by the Commission, congruent with

the argument propounded by Squaw, is the demonstration of an arbitrary classification established by the Commission.

The diverging approaches which premise the parties' positions have in effect caused this Court to examine minutely the multitudinous examples, as to the treatment of other applicants, in an effort to ascertain if such examples support or contradict the contentions of the respective parties as to whether the action of the Commission in its treatment of Squaw constituted an abuse of discretion which amounted to arbitrary and capricious action. This Court was, as a result, faced with not only examining the application of Squaw, but a time consuming perusal of information furnished by both parties concerning 53 applications, not counting multiple applications by some companies. The Court will not delineate all of the applications reviewed, but will confine its comments to the more relevant applications in order to present a comprehensive picture of the action taken by the Commission. This approach is taken in order that the proper determination can be made in exploring any aspect of an abuse of discretion on the part of the Commission and/or whether their action was arbitrary or capricious.

Before venturing forth on an analysis of the applications hereinabove cited, the Court will reiterate, for the benefit of all concerned, that it is aware of the short time limits, the vast amount of applications to be processed, and the limited man power the Commission had available to surmount the chaos created by the new regulation.

As developed in oral argument, and noted in the Erenberg affidavit, the Commission did accept applications filed after the cut-off date, if a good faith attempt was shown to meet the June 4, 1974 deadline. Mr. Erenberg stated in his affidavit at page 4:

"Respecting the June 4th deadline, the Commission has permitted disposition of some late-filed applications. In these cases, however, the applicant has demonstrated a good-faith attempt to comply with the June 4, 1974, deadline, as for example where the mailing was accomplished prior to June 4, 1974, but received for filing a date (sic) or so late. Therefore, it has not been our policy to deny an application solely for the reason that it was filed shortly after June 4, 1974, . . . ."

Reviewing the different applications this Court notes the following:

MC–21170, Sub 276G–285G, Bos Lines, Inc. was filed June 13, 1974, and accepted, but later dismissed for failure to submit required evidence;

MC–17600, Sub 4G, Paramount Moving and Storage Co., Inc. was filed June 26, 1975 (sic) and was dismissed for not being timely filed;

MC–114273, Sub 195G, Cedar Rapids Steel Transportation filed June 13, 1974, and later dismissed, on protestant's motion for failure to submit required evidence;

MC–109891, Sub 25G, Infinger Transportation, filed June 12, 1974 and dismissed for not being timely filed on April 2, 1975. The Infinger application was later reinstated May 7, 1975.

The Court has described the above applications to demonstrate that although reasonable time was given in some instances for late filings, one of the above cited cases was initially dismissed for not being timely filed (it should be noted that this particular case was filed one day prior to two of the above mentioned applications whose timeliness was never questioned). The Court has little doubt that the period in question was a hurried and hectic time for the Commission's mail room and in many instances applications were back-logged, due to the inability to process the tremendous response.

Of more concern to this Court than the "reasonable timeliness of the filing", is the Commission's decision as to whether or not the "initial" application was of a legally sufficient character to allow the agency to continue the admin-

istrative process of either granting or denying the OP–OR–9 request. Again, attention is directed to Mr. Erenberg's affidavit wherein it is stated at page 4:

". . . but where such an application lacked the accompanying legal evidence heretofore discussed, our attorneys were instructed to dismiss or deny the application."

The evidence designated by the Commission as "legal" is reflected at page 2 of Mr. Erenberg's affidavit:

"The evidence required to be submitted, having a legal bearing upon the disposition of the proceeding, consists of (1) a traffic abstract, embracing shipments transported through the gateway over the 2 year period preceding November 23, 1973, and/or (2) shipper verified statements in support of the application."

In this connection this Court notes that 49 CFR d 2 iii provides:

"An initial verified statement in support of the application. This should include all of the evidence applicant plans to present in the proceedings, . . ."

The regulations are clear and precise; not so as to their application by the Commission. It is understandable that many applications of varying quantity and quality of submitted evidence created problems for the Commission. The Court takes note of the probable discomposure caused the Commission during this period of time, and, therefore, gives consideration for the occasions where the record reflects certain inconsistencies as to the treatment received by some of the applicants.

Mr. Erenberg stated in his affidavit at page 14:

"Unfortunately, however, in a few isolated instances, (I believe, three) applications have been approved following late filings, due to inadvertance (sic)."

The regulations contain no ambiguity, and the dictate contained therein, that the initial verified statement should include "all of the evidence applicant plans to present", is clear and unequivocal. This Court finds, however, that in more than three instances, applications have been approved following late filings. The Commission, itself, seems to point up the importance of the "all evidence" requirement. As noted on page 13 of Mr. Erenberg's affidavit, in discussing the Peerless Transportation Corp. application, MC–119689, Sub. 12G, wherein applicant filed traffic abstracts covering the period 1969 and 1970, (which did not comply with 49 CFR 1065) and, thereafter tendered additional shipper statements in support, Mr. Erenberg stated:

"The late-tendered evidence was rejected inasmuch as the rules further stipulate that all of applicant's required evidence be submitted with its timely filed application."

See also MC–52861, Subs 34–35G, Wills Trucking, Inc. In MC–106373, Sub 34G, The Service Transport Co. was dismissed for failure to submit the required evidence. The order dismissing stated, "no supplementary evidence is being accepted in these proceedings." In MC–42537, Sub 31G, Cassens Transport Co., in denying the application, Mr. Erenberg's affidavit states at page 10:

"The petition was denied by order issued April 2, 1975, inasmuch as applicant failed to timely submit all of the required evidence, and acceptance of its supplemental filing would prejudicial (sic) to carriers which failed to file applications because sufficient supporting evidence could not be gathered by the established deadline."

Yet this Court finds other instances wherein all of an applicant's evidence was not submitted and yet a dismissal or denial did not occur.

In MC–117344, Sub 234G, Maxwell Co., supporting shippers' statements dated December 27, 1974 and January 6, 1975 were received and the application approved;

In MC–107993, Sub 34G, J. J. Willis Trucking Co., verified statements were submitted July 10, 1975.

In MC–46365, Sub 3G, P. W. Lincoln Horse Transp., Inc., verified statements in support were submitted July 9, 1975.

In MC–74169, Sub 6G, Chieftan Van Lines, verified statements of tacking were received August 3, 1974.

In defense of this late evidence, the Commission stated at page 3 of their Joint Memorandum, filed July 21, 1975:

"Unlike the Squaw application, the Chieftan application was substantially complete upon filing. However, upon the Commission's request, the applicant submitted, on August 3, 1974, a modification to Appendix H, which was attached to the application as originally filed."

The foregoing action tends to reflect a differing standard from one of "all evidence" to a "substantial compliance" requirements.

In MC–2473, Sub 16G, Billings Transfer Corp., Inc., the applicant was granted an extension of time to file his verified statement. As noted in the Commission's Joint Memorandum filed July 21, 1975, at page 3:

"Unlike the Squaw application which contained no affidavit when filed, the Billings application contained an affidavit of Mr. Albert, President of Billings, which explained that over 275 hours had been spent in a good faith attempt to prepare the required traffic abstract, yet the required abstract was not completed as of June 4, 1974 . . . Mr. Albert's affidavit contained a specific request that the Commission accept the application with the understanding that the required evidence would be filed 'as soon after June 4, 1974, as is physically possible'."

In that case all that was before the Commission was a verified extension of time. The Commission's records indicate that Billings submitted a 129 page traffic study on June 14, 1974—some 10 days late. As noted at page 5 of the Joint Memorandum:

"However, the late filing occurred only 10 days following the due date; 10 days with explanation as contrasted to six months without explanation clearly does not indicate that a carrier *similarly situated* was accorded different treatment."

In MC–76262, Sub 2G, Weir-Cove Moving and Storage, in denying the application for failing to file the required evidence, it is stated in Mr. Erenberg's affidavit, at page 11:

"Applicant stated (in its initial filing), that it needed additional time to prepare the evidence required by the regulations. However, as noted in the Commission order, it failed to tender any such evidence thereafter."

And in MC–47800, Sub 6G, Sudler Moving and Storage, d/b/a Allstates Van and Storage, as reflected in the Pyeatt affidavit at page 5, the initial application included an affidavit from the president of the company requesting an extension of time to file appropriate required evidence.

"The applicant filed on July 30, 1974, a verified statement by R. B. Mc-Millan, President of the applicant, together with 10 exhibits including an abstract of traffic showing operations via the gateway for the two years preceding November 23, 1973."

The application was eventually granted.

It is apparent, therefore, that the Commission was establishing a "reasonable time limit" in filing the required evidence as opposed to the more strict "all evidence" requirement.

In MC–109689, Sub 274G, W. S. Hatch Co., and its application, the Court notes that initial application included an affidavit by a Mr. Nelson indicating a refusal to submit the traffic studies. Thereafter on March 28, 1975, the Commission sent a letter to Hatch, as was sent to Squaw, requesting additional evidence. As noted in the Joint Memoran-

dum of Defendants of July 21, 1974, at page 4:

> "As indicated in the affidavit of Mr. M. Erenberg which has been submitted to the Court as Exhibit I for Defendants, the mailing of the March 28, 1975, letter was contrary to specific instructions."

In the Pyeatt affidavit, filed on August 25, 1975, on behalf of Squaw, at page 4, in respect to a discussion of MC–115523, Sub 171G, and its Petition for Reconsideration:

> "A petition for reconsideration was filed by the applicant on July 14, 1975. The petition for reconsideration recites that 'by letter of December 16, 1974, from the Office of Proceedings, the applicant was requested to submit a verified statement in support of the application and a traffic study showing operations via the gateway for the two years preceding November 23, 1973'."

Although the Hatch Co. application was later dismissed, as obviously was the above noted application, and even though said requests by the Commission are labeled as inadvertent, such a procedure enhances the concept that the regulations were new; the applicants multitudinous; and the procedures of the Commission not always precise.

In MC–52579, Sub 141G, Gilbert Camera Corp. submitted maps depicting the varying circuity in its operations—but failed to meet all the requisites of 49 CFR 1065. Mr. Erenberg, in his affidavit states at page 11:

> "The denial was based in part on said failure, and also inasmuch as protestants' contentions respecting applicant's alleged gateway operations could not be contradicted without such evidence being made available."

A seemingly different standard is utilized once again—not all the evidence, but rather enough evidence to overcome any protestant's proof.

The prior comparisons are intended, in no way, to be viewed as the results of perusing all applications filed before the Commission. These only represent those applications made known to the Court by the parties.

Squaw's two-pronged attack on the Commission's action is directed toward the "double standard" utilized in the initial denial of the Squaw application, and the abuse of discretion utilized by the Commission in the denial of Squaw's Petition for Reconsideration.

Before considering the cases hereinafter cited, the Court feels that a qualifying comment must be made with reference to the tests promulgated and considered by the various Courts in considering appeals from rulings of the Interstate Commerce Commission.

As hereinafter stated, this Court feels that the instant question before the Court is one of first impression. All of the cases that this Court has thus been able to discover deal with rulings on applications for original authority. In the present case we are dealing with an existing authority that is sought to be consolidated by new rules and regulations to eliminate "gateways". The basic premise of Squaw's attack, is thus directed to the manner in which the new regulations and rules were applied to Squaw and other carriers with existing authority.

 The Court is cognizant of its limited review of agency action (Administrative Procedure Act in 5 U.S.C. § 706). Additionally, the Court is aware that normally the findings of the Interstate Commerce Commission should not be set aside, modified, or hampered by judicial review if they are supported by findings which have a rational basis and are supported by the record, and, moreover, are not arbitrary and capricious. *Allied Van Lines Co. v. U. S.*, 303 F.Supp. 742 (USDC C.D.Cal., 1969); *Baltimore and Ohio Railroad Co. v. U. S.*, 391 F. Supp. 249 (USDC E.D.Pa., 1975). The scope of review under an arbitrary and capricious standard is narrow. *American Fed. of Labor & Cong. of Ind. Org. v. Brennan* (USDC D.C., 1975) 390 F.

Supp. 972; *Bowman Transp. v. Ark-Best Freight System*, 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974); *Citizens to Preserve Overton Park v. Volpe*, supra. The reason for the limited review is to give proper respect to the expertise of the administrative tribunal and to help promote the uniform application of agency rules. *R–C Motor Lines, Inc. v. U. S.*, 350 F.Supp. 1169, (USDC M.D.Fla., 1972), aff'd 411 U.S. 941, 93 S.Ct. 1925, 36 L.Ed.2d 406 (1973).

■ Reiterating once more, the Commission simply contends that there was no arbitrary and capricious action on its part, in that Squaw's application was treated no differently than any other applicant similarly situated. As shown by the prior comparisons made by this Court of different applicants, this Court cannot agree with the Commission in this respect. But such a finding, in and of itself, does not necessarily show arbitrary and capricious action by the Commission. Inconsistency is not always equivalent to "arbitrary and capricious".

The position of Squaw is readily ascertainable in the special concurring opinion of Circuit Judge John R. Brown in *Mary Carter Paint Co. v. Federal Trade Commission*, 333 F.2d 654 (5th Cir., 1964) rev'd on other grounds, 382 U.S. 46, 86 S.Ct. 219, 15 L.Ed.2d 128 (1965). Judge Brown stated at page 660:

"Our complex society now demands administrative agencies. The variety of problems dealt with make absolute consistency, perfect symmetry, impossible. And the law reflects its good sense by not exacting it. But law does not permit an agency to grant to one person the right to do that which it denies to another similarly situated. There may not be a rule for Monday, and another for Tuesday, a rule for general application, but denied outright in a specific case."

Attention is again drawn to the case of *R–C Motor Lines v. U. S.*, supra, 350 F. Supp. at 1172, wherein the Court states:

"Although the doctrine of stare decisis does not apply to decisions of administrative bodies, consistency of administrative rulings is essential, for to adopt different standards for similar situations is to act arbitrarily."

See also *Dixie Highway Express, Inc. v. U. S.*, 268 F.Supp. 239 (USDC S.D.Miss. 1967) reversed on other grounds 389 U. S. 409, 88 S.Ct. 539, 19 L.Ed.2d 639 (1967); *Baker v. U. S.*, 338 F.Supp. 331 (USDC E.D.Pa.1972).

For cases delineating the need for explanation when an Agency deviates from its regulations or established general policies, see *NLRB v. Int. Union of Operating Eng. Local 925*, 460 F.2d 589 (5th Cir., 1972); *Melody Music Inc. v. F.C.C.*, 120 U.S.App.D.C. 241, 345 F.2d 730 (1965); *Marriott In-Flite Serv. Div. of Marriott Corp. v. NLRB*, 417 F.2d 563 (5th Cir., 1969) cert. den. 397 U.S. 920, 90 S.Ct. 929, 25 L.Ed.2d 101 (1970); and, *Marco Sales Co. v. F.T.C.*, 453 F.2d 1 (2nd Cir., 1971).

This Court, while not holding that the action of the Commission was necessarily arbitrary, feels the matter should be remanded for reconsideration. An examination of Squaw's Petition for Reconsideration gives weight to said determination.

As alluded to earlier, upon the denial of its initial application, Squaw filed with the Commission, on December 13, 1974, a Petition for Reconsideration pursuant to Rules 101 and 102, General Rules of Practice, codified 49 CFR §§ 1100.101 and 1100.102. Rule 101(b) provides in pertinent part:

"When in a petition filed under this section opportunity is sought to introduce evidence, the evidence to be adduced must be stated briefly, such evidence must not appear to be cumulative, and explanation must be given why such evidence was not previously adduced."

Rule 102 provides in pertinent part:

"When the subject matter of any desired relief is not specifically covered

by the rules in this part, a petition seeking such relief, which relief shall be construed as including appropriate discovery procedures, and stating the reasons therefor may be served and filed."

It was pursuant to Rule 102 that Squaw sought the extraordinary relief.

Squaw's contention, in this regard, is that: (1) the evidence was produced; and (2) "sufficient and proper cause" was shown to reopen the proceedings. The Commission, on the other hand, maintains that reconsideration is addressed solely to the agency's discretion; that the application was not timely filed; that Squaw's counsel contemplated a late submission; and therefore, the Commission did not abuse its discretion in finding that the facts did not constitute "sufficient and proper cause". The Commission additionally advances the conception that Squaw has an additional remedy in an application seeking a Certificate of Public Convenience and Necessity. There is no controversy that Squaw's Petition for Reconsideration is guided by Rule 101(b), supra.

Indubiously, the present record contains more instances of inconsistency of action in the Commission's handling of the Gateway Eliminations than was known to the Commission or anyone else, including Squaw, at the time Squaw filed its Petition for Reconsideration. Notwithstanding that this Court has not found the inconsistent action on the part of the Commission to be arbitrary and capricious, such action should be kept in mind in the examination of the Petition for Reconsideration.

Attached to Squaw's Petition for Reconsideration, designated as Appendix I, is an affidavit of the attorney for Squaw Transit, endeavoring to establish "sufficient and proper cause" to justify reopening the Gateway Elimination application of Squaw. The Court will summarize the contents of the affidavit as follows:

1. Counsel was handling Gateway Elimination matters for other companies besides Squaw.

2. Counsel went to Squaw's Headquarters to set up procedures for preparation of paper work to support filings.

3. Three letter gateway elimination notices were prepared and timely filed as well as an OP–OR–9 gateway elimination which involved eliminating certain gateways in Oklahoma, Arkansas, and Texas.

4. Squaw had furnished counsel with information concerning shipments handled under involved authorities. Counsel was not able to put these in final form to submit with the initial application. Moreover, he was not able to prepare a verified statement with the required evidence to sustain applicant's burden of proof in gateway elimination in time to submit it with the application. Affidavits of two shippers were received by counsel on May 31, 1974, but it was counsel's decision not to submit them.

5. Quoting from the affidavit of counsel at page 2:

"I contemplated being able to promptly finalize a supporting statement and submit it along with the supporting shipper statements shortly after the filing of the application itself."

6. Thereafter, counsel relates his personal tragedy commencing June 13, 1974, in respect to his wife, and the eventual discovery and continued treatment of her for cancer through the remaining part of 1974.

7. He relates that he received two letters from the Commission in August and that such receipt propelled him into believing that the application was being processed; that he was not overly concerned about submission of the evidence in support of the application.

It should be reiterated that in the cover letter to Squaw's application of June 3, 1974, counsel for Squaw informed the Commission:

"As I understand it, these gateway elimination rules call for the submis-

sion of evidence by applicant at the time the application is filed. I am in the process of preparing such evidence and the same will be promptly filed when it is prepared. If there is any objection to this practice, I would appreciate someone with the Commission calling me collect."

■ The case law is replete that rehearings before administrative bodies are addressed to their discretion and only a clear abuse, of said discretion will allow a reversal of their decision. *U. S. v. Pierce Auto Lines*, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946); *Northern Lines Merger Cases*, 396 U.S. 491, 90 S.Ct. 708, 24 L.Ed.2d 700 (1970).

The Court acknowledges standards have been set up by the case law for remanding a matter to the Commission for reopening of proceedings. See *Bowman Transportation v. Ark-Best Freight System*, supra, .419 U.S., at 295–296, 95 S. Ct. 438; *Interstate Commerce Commission v. Jersey City*, 322 U.S. 503, 64 S. Ct. 1129, 88 L.Ed. 1420 (1944); *Cedar Rapids Steel Transportation, Inc. v. I.C. C.*, 391 F.Supp. 181 (D.C., N.D.Iowa 1975).

It is certain that the Squaw situation is not one of a new circumstance, a new trend, or a new fact discovered. See *Interstate Commerce Commission v. Jersey City*, supra, 322 U.S. at 514, 64 S.Ct. 1129. It is a request to reconsider the dismissal by one of many applicants who were caught up in a hurried race to the Commission's office and which onslaught evidently caused certain inadvertent errors by the Commission and certain inconsistent rulings. The evidence before this Court indicates that this was an application by a carrier whose offices were diligent in getting the required material to counsel, and that counsel failed to file it timely due to personal tragedy. It is true that the initial cover letter of counsel and the affidavit attached to the Petition for Reconsideration show there was no intention to meet the deadline on the 4th of June with all requisite evidence.

The Court, however, finds that, including, but not limited to, the lack of any response from the Commission in respect to his initial cover letter requesting a collect call from the Commission should things not be proper; two letters in August of 1974, from the Commission requesting additional information; and knowledge of the physical plight of his wife as early as June 13, 1974; constituted delaying, intervening facts in the record which added to the plight and delay of counsel.

Under the existing circumstances, this Court is not criticizing the Commission for its inconsistent actions; nor is it imposing blame on Squaw's counsel.

In looking at the respective postures of the parties, it is apparent that the only party hurt by the action of the Commission is Squaw. There is no showing that the Commission will suffer any harm by reconsidering the matter, nor are there any protestants, shown in the record, who will be adversely affected. The Court notes there are two supporting shippers' statements, M. W. Kellogg Company and Bethlehem Steel Corporation, which relate the detrimental effect and harm they would suffer should Squaw be forced to cease operations.

The Commission, as noted in the December 31, 1974, order denying reconsideration, promoted the idea that Squaw still has a viable alternative remedy in seeking a Certificate of Public Convenience and Necessity (49 CFR § 1100.-247). Assuming arguendo, that such an alternative is available, such a remedy is not a counterpart with the gateway elimination procedure as to time and cost. As found in *Gateway Elimination*, 119 MC 530:

"The principal difference between such a gateway elimination application and the usual one will be that the former will be assigned priority and be determined as expeditiously as possible given the severe strains now upon our staff and budgetary resources."

■ The matter as presented is a case of first impression with reference to the procedures utilized in processing applications pursuant to the regulations. To read the regulations involved, 49 CFR 1065.1 et seq., one could not foresee the occurrences which have occurred in this case. Had Squaw been the only applicant to fail to meet the "all evidence" rule, or had all who had so failed been denied their application, this Court should possibly have a different view toward the dismissal of Squaw's Petition for Reconsideration by the Commission. However, all who had failed to submit timely all of the evidence were not denied their respective applications.

Unexpected, superseding problems encountered by counsel for Squaw, (as set forth above) aided in causing the delay. Additionally, the multitude of applications; the shortness of the time period provided; and the lack of a definite program to administer the applications caused inadvertent and inconsistent actions on behalf of the Commission. The ultimate cause and result, although unfortunate, can be attributed to no specific or single act by either party, but more to a number of occasions that combined and comingled to cause the situation now before this Court.

Mindful of the circumstances of all parties, attention is directed toward the thoughts of the Court in *James J. Williams, Inc. v. U. S.*, 241 F.Supp. 535 (USDC E.D.Wash., 1965) at 538:

"Administrative boards and commissions owe as much duty to so conduct their hearings and proceedings as to secure a just result as is the case in respect to proceedings in court."

The *Williams* Court, supra, continues by quoting from *Ford Motor Co. v. National Labor Relations Board*, 305 U.S. 364, 373, 59 S.Ct. 301, 83 L.Ed. 221 (1939):

" 'The purpose of the judicial review is consonant with that of the administrative proceeding itself,—to secure a just result with a minimum of technical requirements .' "

In discussing other jurisdictions' responses to "just results" the *Williams* Court continues:

"This power to order a remand to an administrative body to enable that body to take into consideration oversights which may have crept into the decision of the board or commission by reason of mistake or inadvertence was recognized and exercised in *Fleming v. Federal Communications Commission*, 96 U.S.App.D.C. 223, 225 F. 2d 523, 526, . . . 'These principles are not limited to cases in which an agency has made inadequate findings. They extend to cases where even without fault of the agency, the state of the record may preclude a "just result." ' The court further cited *National Labor Relations Board v. Jones and Laughlin Co.*, 331 U.S. 416, 428 [67 S.Ct. 1274, 91 L.Ed. 1575] . . ., which stated the following: 'When circumstances do arise after the Board's order has been issued which may affect the propriety of enforcement of the order, the reviewing court has discretion to decide the matter itself or to remand it to the Board for further consideration.' "

After hearing all the evidence in this case; considering all of the briefs; affidavits; exhibits filed; the arguments of counsel, and considering the mitigating circumstances, the Court finds that the Commission should have granted Squaw a rehearing. The denial of a rehearing under the circumstances surrounding this case, as elicited at the trial, constituted an abuse of discretion by the Commission.

From all the evidence and circumstances surrounding this case, the Court finds that there was no showing of injury to the Commission; there was a strong showing of injury to the plaintiff Squaw Transit Company. Therefore, this matter should be remanded to the Commission for reconsideration in light of this opinion.

It is, therefore, ordered that this case be remanded to the Interstate Commerce

Commission with directions that the Petition for Reconsideration be granted in light of this opinion.

COOK, District Judge (concurring).

I concur in full with the Opinion filed herein and its resultant holding.

In addition to the statements contained in said opinion, I would add an additional statement resulting from the actions of the Commission in accepting the application filed by the Squaw Transit Company.

The Commission received the application of Squaw and, though it was not in full compliance with pertinent CFR regulations, accepted the application as tendered and filed it together with the tendered filing fee. Thereafter the Commission forwarded various communications to Squaw which clearly led Squaw to believe the application was being processed. At a later date, the Commission, without notice, peremptorily dismissed the application stating as its reason that the application was not properly filed, in that Squaw failed to comply with 49 CFR 1065 by not attaching the required supporting documents to the application.

It is my opinion that having accepted the filing and having treated the application as properly before the Commission on its merits, it was incumbent upon the Commission to give reasonable notice to Squaw of its intended action to dismiss the application. Such notice would be required in order to comply with the minimal requirements of due process. See, *Hess & Clark Division of Rhodia, Inc., v. Food & Drug Admn.*, 495 F.2d 975 (D.C.Cir.) (1974); *Florida Citrus Commission v. United States*, 144 F.Supp. 517 (N.D.Fla.1956) aff'd 352 U.S. 102, 77 S.Ct. 589, 1 L.Ed.2d 595 (1957); *Jones Truck Lines Inc., v. United States*, 146 F.Supp. 697 (W.D.Ark. 1956); *Pinkett v. United States*, 105 F. Supp. 67 (D.Md.1952).

The failure of the Commission to provide reasonable notice of its intended actions to dismiss and reasons for such dismissal and thereafter the failure to permit Squaw to comply with such requirements, in light of its previous actions, I believe, constitute arbitrary and capricious conduct by the Commission which would require that the Commission consider on its merits Squaw's subsequent petition for reconsideration.

In all other matters, I concur in the Opinion filed herein.