AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS et al., Plaintiffs,

v.

Peter J. BRENNAN et al., Defendants.

Civ. A. No. 74–406.

United States District Court, District of Columbia, Civil Division.

March 20, 1975.

J. Albert Woll, Elliot Bredhoff, Washington, D. C., Lester Asher, Chicago, Ill., for plaintiffs.

Royce C. Lamberth, Asst. U. S. Atty., Washington, D. C., for defendants.

MEMORANDUM AND ORDER

JOHN LEWIS SMITH, Jr., District Judge.

Under section 18 of the Occupational Safety and Health Act of 1970 (29 U.S.C. § 667) (1970) (Act or OSHA), a State

may submit a plan for the development and enforcement of occupational safety and health standards, which plan will be effective in lieu of the Federal program if specified statutory criteria are met. Three of the most important criteria are that the State standards be "at least as effective" as the Federal standards promulgated; that there be satisfactory assurances that the State agency administering the plan have "qualified personnel" necessary for the enforcement of the State standards; and that there be satisfactory assurances that the State will devote "adequate funds" to the administration and enforcement of the standards. 29 U.S.C. §§ 667(c)(2), (4), (5). Plaintiffs have brought this action challenging the regulations issued by the Secretary of Labor (Secretary) in implementation of the latter two criteria—qualified personnel and adequate funds. The case is before the Court on defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, and on plaintiffs' Cross Motion for Summary Judgment.[1]

### I

In implementing OSHA, the Secretary has issued voluminous regulations, found at 29 C.F.R. pts. 1900–2200 (1974). The regulations contested in the present case state:

"*Personnel*. The State plan shall provide assurance that the designated agency or agencies have, or will have, a sufficient number of adequately trained and qualified personnel necessary for the enforcement of the stand-

ards. For this purpose qualified personnel means persons employed on a merit-basis, including all persons engaged in the development of standards and the administration of the State plan. Conformity with the Standards for a Merit System of Personnel Administration, 45 C.F.R. Part 70 . . . will be deemed to meet this requirement.

"*Resources*. The State plan shall contain satisfactory assurances through the use of budget, organizational description, and any other appropriate means that the State will devote adequate funds to the administration and enforcement of the program. The Assistant Secretary will make periodic evaluations of the adequacy of the State resources devoted to the plan." 29 C.F.R. §§ 1902.3(h)–(i).

Contending that the inspection process is key to the success of the OSHA program[2] and accordingly that sufficient personnel and funding are essential, plaintiffs claim that these regulations are arbitrary and capricious. They state that the regulations: 1) merely "parrot" the language of the statute; 2) establish no rational criteria and guidelines for evaluating the sufficiency of a State's commitment to effective inspection and enforcement; and 3) have resulted in nonuniform State plans (26 approved to date) with wide disparities in States' manpower commitments and fund allotments.

■■■ Where arbitrary and capricious administrative action is alleged, the reviewing court must determine whether

---

1. Plaintiffs in this action are the AFL-CIO, the Industrial Union Department of the AFL–CIO, and the Illinois State Federation of Labor and Congress of Industrial Organizations. Defendants are the Secretary of Labor, the Assistant Secretary of Labor for Occupational Safety and Health, and an intervenor, the State of California. Two other counts raised in the case, concerning State enforcement of pre-OSHA laws pending passage of enabling legislation and the Secretary's arbitrary application of the statutory requirement of equally effective State standards, have been dismissed by stipulation of the parties.

2. *See* 29 U.S.C. § 657(a), (f)(1) (provisions for periodic and special inspections); *id.* §§ 658, 666 (citations and penalties for inspection violations). *Cf.* Brennan v. Occupational Safety and Health Review Comm'n, 491 F.2d 1340, 1343 (2d Cir. 1974); S. Rep.No.1282, 91st Cong., 2d Sess. 2–5 (1970); U.S.Code Cong. & Admin.News 1970, p. 5177; H.Rep.No.1291, 91st Cong., 2d Sess. 14–16 (1970) (statistics on industrial accidents and employee disabilities prior to enactment of OSHA).

there is a rational basis to support the agency's action. 5 U.S.C. § 706(2)(A); *see* Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 284–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974). The test is a narrow one, with deference given to the agency—especially where the challenge involves a contemporaneous construction of a statute or regulation by the agency responsible for implementing a new program. Udall v. Tallman, 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). In the present action, the Court concludes that the Secretary has promulgated rational, ascertainable standards for personnel and funding, and therefore upholds the regulations at issue.

## II

■ As noted, the requirements set out in the statute are for "qualified personnel necessary for the enforcement of [State] standards," and for "adequate funds" for State administration and enforcement. In contrast, the occupational safety and health standards established by a State must be "at least as effective . . . as [Federal OSHA] standards" for the Secretary to approve the State plan. 29 U.S.C. § 667(c)(2); *cf. id.* §§ 667(c)(3), (7). Plaintiffs argue from this distinction that the statutory standards for State enforcement personnel and funding require absolute sufficiency, rather than a State effort that is merely comparable to Federal inspection and expenditure levels.

However, the whole purpose behind OSHA's encouragement of State programs meeting specified criteria is to assure adequate standards, enforcement personnel, and funding that measure up to the Federal plan which would otherwise be operative. Congress clearly intended that a proposed State plan be considered as a piece in relation to the Federal program inaugurated under OSHA.[3] The statute's yardstick of "as effective as" Federal standards thus extends also to State personnel and funding levels. Similarly, it is only these equally effective State standards which can provide a measurement for the personnel and funding necessary for the standards' implementation and enforcement. Therefore, "qualified" and "adequate" do not have an absolute sense in State enforcement plans, but are terms relative to the Federal personnel and funding levels established under OSHA.[4]

## III

■ Having established that a State occupational safety and health plan must meet minimum Federal requirements (that is, be "at least as effective"), it is necessary to consider the administrative regulations, directives, and procedures that have given content to the terms "qualified personnel" and "adequate funds".

The term "qualified personnel" has both a quantitative and a qualitative component. As for numerical levels, the implementing regulation simply requires a "sufficient number" of State enforcement personnel. 29 C.F.R. § 1902.3(h). However, a subsequent OSHA Program Directive (No. 72–24) to regional administrators went into some detail on this matter. The Directive lists several

3. *See* S.Rep.No.1282, *supra* note 2, at 18, U.S.Code Cong. & Admin.News 1970, p. 5177; H.Rep.No.1291 *supra* note 2, at 32–33; 116 Cong.Rec. 37629 (1970) (remarks of Sen. Cranston).

4. However, a simple table comparing relative numbers of Federal and State enforcement personnel (and the relative funding) scarcely suffices to show that all State plans approved to date meet the statutory require-
ments. Federal inspection personnel and OSHA funding have been limited both by administrative capabilities and by lack of resources, and it is improper to use these low Federal totals as a talisman for State plans. Rather, the Federal numbers serve as a floor or a minimum; that is, the State plans developed under OSHA are to be *"at least* as effective" as the Federal program. 29 U.S.C. § 667(c)(2).

factors to be considered in evaluating State plans' estimates of enforcement personnel, including the safety and health hazards addressed by the State plan, the number of employers and employees covered, the timetable for full State implementation, the State's geography and industrial concentration, the staff organizational structure, the particular industries targeted, and the general program goals advanced. These factors provide clear and concrete guidelines concerning sufficiency of personnel, and also point up the diverse considerations involved in fashioning and appraising occupational safety and health plans for fifty States, the District of Columbia, Puerto Rico, and four territories. While a strict ratio of inspectors to workers could have been established in the regulations, the Secretary has chosen instead to approve State plans based upon the factors noted above. The Court finds this to be a reasonable course of action.

With regard to the regulation's standards for *qualifications* of State inspectors, 29 C.F.R. § 1902.3(h) provides that enforcement personnel must be adequately trained and also employed on a merit-basis system. No program directives have been promulgated concerning criteria for adequate training. However, several other measures do address the issue of personnel qualifications.

First, the Federal merit system, expressly incorporated in the implementing regulation, requires the selection of employees to be through open competition, and provides for examinations consisting of work-sample and performance tests, rating of training and experience, and background and reference inquiries. 45 C.F.R. § 70.10(a). Second, State inspectors have been required to receive certain training in Federal occupational safety and health courses. Third, the administrative review procedures for State plans, which include an opportunity for public comment and a public hearing, are rigorous and exhaustive, and assure that minimum personnel qualifications will be met before approval is given to a State plan.[5] Fourth, there is a period of three years following initial approval during which the Secretary is to evaluate developmental plans for compliance with statutory standards and State assurances; this post-approval monitoring allows for close attention to a State's actual performance under its enforcement plan. 29 U.S.C. § 667(e)–(f). Lastly, in light of the expressed Congressional intent of encouraging States to take the primary initiative in occupational safety and health matters and to conduct experimental and demonstrative projects, it seems improper to bind States with uniform Federal employment regulations.[6] For all of these reasons, the Court finds the Secretary's standards for qualified personnel to be rational and sufficiently definite.

The final area challenged by plaintiffs is the lack of criteria for *adequate funding* of State plans. The regulation requires sufficient resources for the enforcement plan through the use of "budg-

---

5. *See* 29 C.F.R. §§ 1902.10–.23; OSHA Program Directives Nos. 72–10, 72–11. The record of the Secretary's review of the Illinois State OSHA plan was contained in five large volumes entered as exhibits to this case, totalling almost 2000 pages. Upon the Secretary's insistence, reflected in the review record, the Illinois enforcement plan was upgraded in both quantity and quality of personnel.

6. *See* 29 U.S.C. § 651(b)(11). Too much Federal dominance or the imposition of extreme enforcement burdens could seriously jeopardize Federal-State cooperation in the area of occupational safety and health. The Court notes that two of the 26 States with approved plans, Illinois and New Jersey, have recently decided to revoke their plans and return to exclusive Federal OSHA coverage. On the other hand, California's occupational safety and health program has achieved exceptional success in its first year of operation; the plan operates with a staff of over 400 permanent and supporting personnel, and a budget in excess of $12 million.

et, organizational description, and any other appropriate means." 29 C.F.R. § 1902.3(i). As applied, this means that a State plan must contain detailed budgets setting forth its allocation of resources for enforcement and administration.[7] The regulation also provides for periodic evaluations of the adequacy of resources devoted to the State plan. Together with the comprehensive review procedures and the post-approval monitoring process noted above, these periodic evaluations assure that State funding will be adequate. While there may be great disparities in State OSHA plan expenditures (ranging, by plaintiffs' calculations, from Colorado's $.72 per worker to Wyoming's $2.19 per worker), "adequate" funding can only be defined in terms of the scope of the State plan, the occupational safety and health standards promulgated, the number and salaries of inspectors, the geography and industrial concentration of the State, and the types of industries within the State. The Court concludes that the Act and the Secretary's regulation assure a rational basis for evaluating and approving State OSHA expenditures.

## IV

Accordingly, upon consideration of defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, plaintiffs' Cross Motion for Summary Judgment, the points and authorities and supplemental memoranda submitted by the parties, oral argument having been heard, and for reasons set forth in this Memorandum, it is by the Court this 20th day of March, 1975

Ordered that plaintiffs' Motion for Summary Judgment be, and the same hereby is, denied; and it is further

Ordered that defendants' Motion for Summary Judgment be, and the same hereby is, granted.

7. Federal grants for State OSHA plans may provide up to 50% of the total cost of the program. *See* 29 U.S.C. § 672(g).