Gerald L. BALILES, Attorney General of the Commonwealth of Virginia, Plaintiff,

v.

Raymond J. DONOVAN, Secretary of Labor, et al., Defendants.

Civ. A. No. 80–0057(R).

United States District Court, W.D. Virginia.

Sept. 30, 1982.

---

R. Leonard Vance, John R. Butcher, Asst. Atty. Gen., Richmond, Va., for plaintiff.

E. Montgomery Tucker, Asst. U.S. Atty., Roanoke, Va., Delby C. Etheridge, Dept. of Labor, Robert W. Swain, Washington, D.C., for defendant.

## MEMORANDUM OPINION

TURK, Chief Judge.

Plaintiff Marshall Coleman, former Attorney General of the Commonwealth of Virginia, instituted this suit against former United States Secretary of Labor F. Ray Marshall, and other federal officials seeking declaratory and injunctive relief in connection with the defendants' proposed actions pursuant to the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651–678, and with Virginia's operation of an occupational safety and health plan thereunder. The present parties have been substituted pursuant to the automatic procedures of Fed.R.Civ.P. 25(d). Defendants have filed an original and supplemental motion to dismiss, and plaintiff has filed a motion for partial summary judgment. The court has decided to dismiss the suit because the ultimate issues for resolution are not yet ripe for adjudication.

## I. FACTUAL AND LEGAL BACKGROUND

### A. *The Virginia Plan*

Section 2(b)(11) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651(b)(11) provides:

(b) The Congress declares it to be its purpose and policy, through the exercise of its powers to regulate commerce among the several States and with foreign nations and to provide for the general welfare, to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources—

\* \* \* \* \* \*

(11) by encouraging the States to assume the fullest responsibility for the administration and enforcement of their occupational safety and health laws by providing grants to the States to assist in identifying their needs and responsibilities in the area of occupational safety and health, to develop plans in accordance with the provisions of this Act, to improve the administration and enforcement of State occupational safety and health laws, and to conduct experimental and demonstration projects in connection therewith. . . .

In accordance with this federalistic design, § 18 of the Act, 29 U.S.C. § 667(b), allows States to assume responsibility for the development and enforcement of occupational safety and health standards otherwise subject to federal regulation by submitting a plan in pursuance thereof to the Secretary of Labor. The Secretary is required to approve such state plans if they meet the conditions set forth in § 18(c), 29 U.S.C. § 667(c).[1]

In 1976, in accordance with § 18(b), Virginia promulgated the Virginia Occupational Safety and Health Plan ("VOSH"), a comprehensive plan for the development and enforcement of occupational safety and health standards. The Secretary approved the plan, 41 Fed.Reg. 42,655 (Sept. 28, 1976), and the Virginia legislature enacted it as law. 1976 Va.Acts c. 607. Thereafter, in a series of semiannual reviews conducted pursuant to § 18(f), 29 U.S.C. § 667(f), the Secretary expressed disapproval of Virginia's plan, primarily because it was structured around a decentralized, non-uniform judicial enforcement scheme.

Concurrently, several unions petitioned the Secretary, pursuant to 29 C.F.R. § 1955.5, to withdraw approval of the Virginia Plan. The petitions for removal were published in the Federal Register for public comment. *See* 45 Fed.Reg. 65,625–26 (Oct. 3, 1980); 43 Fed.Reg. 25,491 (June 13, 1978).

In 1979, Virginia amended its law to meet some, but not all, of the Secretary's continuing objections. 1979 Va.Acts c. 354.

The Secretary was not satisfied with the legislative efforts, and on December 28, 1979, the Assistant Secretary for Occupational Safety and Health wrote to then Virginia Governor John N. Dalton reviewing the petitions for withdrawal, the legislative changes, and the operation of the system as a whole. The letter noted areas of disapproval and proposed informal hearings to investigate the matter. It also pro-

---

**1.** (c) Conditions for approval of plan. The Secretary shall approve the plan submitted by a State under subsection (b), or any modification thereof, if such plan in his judgment—

1) designates a State agency or agencies as the agency or agencies responsible for administering the plan throughout the State,
2) provides for the development and enforcement of safety and health standards relating to one or more safety or health issues, which standards (and the enforcement of which standards) are or will be at least as effective in providing safe and healthful employment and places of employment as the standards promulgated under section 6 [29 USCS § 655] which relate to the same issues, and which standards, when applicable to products which are distributed or used in interstate commerce, are required by compelling local conditions and do not unduly burden interstate commerce,
3) provides for a right of entry and inspection of all workplaces subject to the Act which is at least as effective as that provided in section 8 [29 USCS § 657], and includes a prohibition on advance notice of inspections,

4) contains satisfactory assurances that such agency or agencies have or will have the legal authority and qualified personnel necessary for the enforcement of such standards,
5) gives satisfactory assurances that such State will devote adequate funds to the administration and enforcement of such standards,
6) contains satisfactory assurances that such State will, to the extent permitted by its law, establish and maintain an effective and comprehensive occupational safety and health program applicable to all employees of public agencies of the State and its political subdivisions, which program is as effective as the standards contained in an approved plan,
7) requires employers in the State to make reports to the Secretary in the same manner and to the same extent as if the plan were not in effect, and
8) provides that the State agency will make such reports to the Secretary in such form and containing such information, as the Secretary shall from time to time require.

posed a meeting with Virginia officials, and such a meeting was held on January 14, 1980 "to discuss procedures for withdrawal of federal approval of the VOSH Program." *Complaint,* para. 36. This action followed. *See* part II, *infra.*

### B. *The AFL–CIO v. Marshall Litigation*

Section 18(c) of the Act sets forth criteria for determining whether State plans are acceptable. *See* note 1, *supra.* The Secretary promulgated regulations and program directives implementing § 18(c). The regulations concerning staffing and budgetary levels essentially mirrored the language contained in § 18(c)(4) and (5). 29 C.F.R. § 1902.3(h), (i) (1974). To amplify these regulations, the Secretary formulated Program Directives in 1972, which it apparently updated in 1975. Basically, the Directives required states to maintain staffing and budgetary levels that were "at least as effective" as federal levels would have been absent the state plans.

In 1975, the AFL–CIO brought suit in the District Court for the District of Columbia challenging the regulations on the grounds that they were arbitrary and capricious and inconsistent with § 18(c)(4) and (5). According to the AFL–CIO, the requirement that state plans be only "at least as effective as" federal enforcement was inadequate. The District Court granted the Secretary's motion for summary judgment. *AFL–CIO v. Brennan,* 390 F.Supp. 972 (D.D.C.1975), *rev'd* 570 F.2d 1030 (D.C.Cir. 1978).

The Court of Appeals for the District of Columbia reversed, holding that the "at least as effective" standard was incorrect. Rather, "the Secretary has a duty to establish criteria that are part of an articulated plan to achieve a *fully effective* enforcement effort at some point in the foreseeable future." *AFL–CIO v. Marshall,* 570 F.2d 1030, 1042 (D.C.Cir.1978) (emphasis added). Accordingly, the Court ordered the Secretary to establish benchmarks "clearly related to eventual achievements of the goals of the Act." *Id.*

On remand, the District Court ordered the Secretary to establish benchmarks for State plan staffing and funding levels which reflect a "fully effective enforcement program." *AFL–CIO v. Marshall,* [1978] O.S.H.Dec. (CCH) ¶ 23,177 at 28,025 (D.D.C. Dec. 5, 1978). Pursuant to the Order, with the Union's stipulation, the Secretary submitted proposed benchmarks to the District Court on April 25, 1980.[2]

### II. THE INSTANT LAWSUIT

On March 25, 1980, plaintiff Attorney General of the State of Virginia filed this suit stating three claims for relief. The first claim for relief sought a declaratory judgment "that the proper standard for the Secretary to use in determining whether he should approve or withdraw approval of the VOSH Plan is the use of an 'at least as effective' standard and not the use of a 'fully effective' standard...," and for an injunction enjoining the Secretary from attempting to withdraw approval of the VOSH Plan until such a determination has been made.

The second claim for relief sought a declaration that the VOSH Plan complied with § 18(c) of the Act, and an injunction against withdrawal of approval prior to this court's determination of that issue.

The third claim for relief alleged that the Secretary intended to adopt the proposed benchmarks in the *AFL–CIO v. Marshall* litigation prior to notice and comment procedures required by the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.,* and sought an injunction "requiring defendants

---

**2.** Notice of filing of Report to the Court and Stipulation as to the Parties' Agreement, Civ. No. 74–406 (D.D.C., Apr. 25, 1980), *appended to Defendants' Memorandum in Support of its Motion to Dismiss,* filed June 16, 1980.

At the time it filed its Complaint in this matter, plaintiff employed 18 industrial hygienists and 38 safety inspectors which, as plaintiff alleges, are more than OSHA itself would employ absent a State Plan. Under the proposed benchmarks, plaintiff would be required to employ 74 industrial hygienists and 50 safety inspectors in order to receive federal approval. Complaint, para. 27. The increase would have to be accomplished over a five-year period.

to publish the tentative benchmarks in the Federal Register prior to submitting them to the District Court in the District of Columbia. . . ."

Thereafter, on June 16, 1980, the defendants moved to dismiss all three claims for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(1) and (6).[3]

On July 10, 1981, pursuant to Stipulation by the Parties, this Court dismissed without prejudice plaintiff's second cause of action after the Secretary agreed to deny the Union petitions for withdrawal of VOSH approval. The Secretary published its decision three days later, 46 Fed.Reg. 38,141–42 (July 14, 1980), stating that "a withdrawal proceeding against the Virginia Plan is not warranted at this time." *Id.* at 38,141.

On July 24, 1981, the Secretary published notice of its intent to revise the benchmarks in the Federal Register after notice and public comment. 46 Fed.Reg. 38,168.

On April 9, 1982, defendants filed a supplemental motion to dismiss urging additional grounds under Fed.R.Civ.P. 12(b)(1) and (6), as well as the additional ground of failure to join the AFL–CIO as an indispensable party. Fed.R.Civ.P. 12(b)(7). Defendants also took the position that, due to the Secretary's decision to publish the benchmarks in the Federal Register for public comment, the plaintiff's third claim for relief had become moot. Thereafter, on April 22, 1982, plaintiff filed its motion for Partial Summary Judgment as to the merits of its first claim for relief.

This matter now comes before this court on Defendants' Motions to Dismiss and Plaintiff's Motion for Partial Summary Judgment. Defendants have filed supporting exhibits and affidavits in support of their Motions to Dismiss.

## III. RESOLUTION OF THE ISSUES

■ The court concludes that the substantive issues set forth in plaintiff's first and third claims for relief are not ripe for review. The "basic rationale" of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–1516, 18 L.Ed.2d 681 (1967). *See also Toilet Goods Association v. Gardner,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967) and *Gardner v. Toilet Goods Association,* 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967), companion cases to *Abbott Laboratories.* *Abbott Laboratories* formulated a two-pronged inquiry into an issue's ripeness for review: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." 387 U.S. at 149, 87 S.Ct. at 1515.

### A. Fitness for Judicial Decision

■ Like the issue involved in *Abbott Laboratories,* the issues involved herein are purely legal, and the plaintiff emphasizes this point. Factors favoring review, however, must be weighed against countervailing considerations. *Toilet Goods Association v. Gardner,* 387 U.S. at 163, 87 S.Ct. at 1524.

An additional inquiry asks whether there has been "final agency action" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 704. *Abbott Laboratories,* 387 U.S. at 149–52, 87 S.Ct. at 1515–1517. Such a determination requires "pragmatic" interpretation. *Id.* at 149, 87 S.Ct. at 1515–1516. Bearing this in mind, the court concludes that the Secretary's actions in this regard are not "final." Unlike the regulations in *Abbott Laboratories,* the regulations here have not been promulgated as such under the Administrative Procedure Act's rulemaking provisions. Thus, they are not "formal" regulations having the force of law. *See Consolidated Gas Supply*

---

**3.** This Motion was granted by this court on June 17, 1980. The June 17 Order, however, was vacated on June 23, 1980 by Order of this court.

*Corp. v. Federal Energy Regulatory Commission,* 611 F.2d 951, 960 (4th Cir.1979). *See also Pennzoil Co. v. Federal Energy Regulatory Commission,* 645 F.2d 394, 399 (5th Cir.1981). *Cf. Bituminous Coal Operators' Association, Inc. v. Secretary of the Interior,* 547 F.2d 240, 244 (4th Cir.1977) (Secretary's Order that inspectors should issue citations to mining companies for violations of Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. §§ 801–78, committed by construction companies employed by mining Companies "is final agency action because it is binding on all concerned."). Far from being "final" agency action, the benchmarks are indeed, as plaintiff points out, in a "judicial limbo." *Plaintiff's Brief,* filed Sept. 20, 1982, p. 3. The "limbo," however, is not only judicial, but also administrative and legislative.

The "legislative" limbo is highlighted in the Supplemental Appropriations Bill, Pub.L. 97–257, passed by Congress on September 10, 1982, which plaintiff cites in its brief:

> Provided, that none of the funds made available for fiscal year 1982 may be obligated or expended to enforce or prescribe, as a condition for initial, continuing, or final approval of State plans under section 18 of the Occupational Safety and Health Act of 1970, State administrative or enforcement staffing levels which are greater than levels which are determined by the Secretary to be equivalent to Federal staffing levels.

The Conference Report states that the law "permits the Secretary of Labor to grant final approval to those State plans under section 18 of the Act that have staffing levels that are at least equivalent to Federal staffing levels." H.R.Rep. No. 97–747, 97th Cong., 2d Sess. (1982), Cong.Rec., August 13, 1982, p. H5921. How this law and any future Congressional action will affect the benchmarks promulgated pursuant to the District Court's order in *AFL–CIO v. Marshall* remains to be seen; it may moot the entire issue.

The benchmarks are also in an administrative "limbo." According to Patrick R. Tyson, the Director of Federal Compliance and State Programs for the Occupational Safety and Health Administration, the Secretary is not presently requiring states to move toward their benchmark levels and does not anticipate any such requirement in Fiscal Year 1982. *Aff. of Patrick R. Tyson,* Apr. 5, 1982, para. 5. Further, OSHA published notice of its intent to revise the benchmarks; the notice explained that the revision process and proposed new benchmarks would ultimately be published for public comment. 46 Fed.Reg. 38,168 (July 24, 1981).[4] "The new benchmarks, when finally issued by OSHA, will be in the form of a general statement of policy rather than a final rule." 46 Fed.Reg. at 38,169.

Accordingly, it is not at all clear when or even whether the Secretary will enforce the benchmarks promulgated in accordance with the *AFL–CIO v. Marshall* litigation against Virginia. Hence, the agency action is not "final" and the issues are therefore not fit for judicial review.

### B. Hardship to the Plaintiff

In *Abbott Laboratories,* the regulations in issue "purport[ed] to give an authoritative interpretation of a statutory provision that ha[d] a direct effect on the day-to-day business of all prescription drug companies; its promulgation [put] petitioners in a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate." 387 U.S. at 152 *(footnote omitted).* The "dilemma" faced by those petitioners was between complying with costly labeling requirements or facing heavy civil or criminal penalties. "In general, courts have been reluctant to find a direct and immediate impact on a plaintiff without the so-called 'horns of a dilemma' situation." *Texas Energy Reserve Corp. v. Dep't of Energy,* 535 F.Supp. 615, 625 (D.Del.1982).

---

**4.** Such notice and comment procedures may well moot the plaintiff's third claim for relief. In addition, through participation in such procedures, plaintiff may help insure that the proposed benchmarks meet with its approval. If so, the first claim for relief would also become moot.

Plaintiff invokes the dilemma test on Virginia's behalf: "Virginia must either comply with the standard it believes to be unlawful, at great expense to the Commonwealth, or remain subject to a plan withdrawal at any time, and remain incapable of obtaining final approval of its OSHA plan." *Plaintiff's Brief,* filed Sept. 20, 1982, p. 3. It is clear, however, that the Secretary has no present intention of withdrawing approval of the Virginia Plan. *See Notice of Stipulated Settlement,* filed July 10, 1981; 46 Fed.Reg. 38,141–42 (July 14, 1981). Further, as discussed above, the benchmarks are not final, and plaintiff does not know what Virginia's ultimate burden will be. This is not like the situation in *Abbott Laboratories* where "[t]he regulations were clear-cut, and were made effective immediately upon publication; as noted earlier the agency's counsel represented to the District Court that immediate compliance with their terms was expected." 387 U.S. at 152, 87 S.Ct. at 1517. This case is much more akin to the situation in *Toilet Goods Ass'n v. Gardner,* where enforcement of the regulations was highly tentative. 387 U.S. at 163–66, 87 S.Ct. at 1524–1525. The benchmarks do not operate *ex propio vigore,* but through withdrawal proceedings upon non-compliance. The plaintiff's failure to comply with the benchmarks does not visit upon it heavy civil or criminal penalties. Only if the Secretary withdraws approval will plaintiff suffer hardship; but such withdrawal is not imminent.

Plaintiff also complains that it cannot obtain final approval of its plan. But such final approval will depend upon a number of factors, including the contents of final benchmarks. *See Aff. of Patrick R. Tyson,* Apr. 5, 1982, paras. 3, 4. The Secretary cannot finally approve—or withhold approval of—Virginia's plan until the benchmarks are final.

Prudential concerns demand restraint in this situation. The court concludes that dismissing the case now for lack of ripeness [5] will allow the administrative process to run its course. Plaintiff can renew its suit when and if the benchmarks become final, and when and if Virginia suffers concrete adverse consequences from their application.[6] Nothing has been presented to the court which indicates that Virginia is currently moving toward compliance with the benchmarks. Furthermore, it would

---

**5.** Defendants have raised a number of substantial issues in support of their motions to dismiss. In light of the approach taken it is unnecessary to address those points at this time. The court notes, however, that it is troubled by the lack of adversity as to the ultimate issue for decision in plaintiff's first claim for relief, *viz.,* the appropriate standard to be used by the Secretary in deciding whether to approve state plans. A reading of the *AFL–CIO v. Marshall* opinion demonstrates that the issue is not nearly as simple and clear-cut as plaintiff's and the various amicus' briefs on this issue would lead the court to believe. It is clear that the Secretary agrees with plaintiff on this ultimate issue even if it disagrees as to the effect of the opinion and order in that case upon this one. The court would hesitate to decide such a question without the benefit of argument from a truly adverse party.

**6.** In any subsequent suit, it may be advisable to name the AFL–CIO as a defendant. This would guarantee the requisite adversity as to the first claim for relief; it would also moot the defendants' motion to dismiss under Fed.R. Civ.P. 12(b)(7) for failure to join an indispensable party. And, as the Court noted in *Abbott Laboratories:* "[C]ourts may even refuse declaratory relief for the nonjoinder of interested parties who are not, technically speaking, indispensable." 387 U.S. at 155, 87 S.Ct. at 1519.

Defendants have also raised the very difficult problem of comity with respect to the Order rendered by the District Court for the District of Columbia. Plaintiff maintains that "The Commonwealth is seeking here only a declaration of the law that affects the approval or withdrawal of the Virginia State plan. That declaration would in no way interfere with the district court for the District of Columbia or the Secretary's performance of his obligations under the court's Decree." *Plaintiff's Brief,* filed Sept. 20, 1982, at p. 10. The court cannot agree. A declaration by this court to the effect that the proper standard is "at least as effective" would clearly conflict with that Order. The Order enjoins the Secretary to promulgate benchmarks with nationwide application. The practical effect of the Order sought from this court would be to compel the Secretary to abandon those benchmarks in evaluating the Virginia plan. The conflict with the District of Columbia Order is inescapable, and the issue of comity would definitely be present should subsequent litigation evolve.

appear obvious that significant administrative barriers remain to be hurdled before VOSH can be subjected to further question and attack.

Accordingly, defendants' motions to dismiss will be granted in an Order entered this date.